E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division
RAHUL R.A. HARI (Cal. Bar No. 313528)
Assistant United States Attorneys
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-2420
     E-mail: Rahul.Hari@usdoj.gov

Attorneys for Defendants.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYNARD DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF PRISONS, USP VICTORVILLE MEDICAL DEPARTMENT, USP MEDICAL NURSE GOMEZ, USP VICTORVILLE OFFICER MARTINI,<br><br>    Defendants. | No. 5:21-cv-01475-CAS-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; AND PROPOSED ORDER**<br><br>Hearing Date:  October 24, 2022<br>Hearing Time:  10:00 a.m.<br>Ctrm:       First Street Courthouse<br>              Courtroom 8D<br><br><br>Hon. Christina A. Snyder<br>United States District Judge |

# **TABLE OF CONTENTS**

Pages(s)

NOTICE OF MOTION AND MOTION TO DISMISS.................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.     INTRODUCTION ...............................................................................................1

II.    STATEMENT OF FACTS ...................................................................................1

     A.     The PLRA's Four-Step Administrative Process and Plaintiff's
        Administrative Submissions..................................................................3

III.   LEGAL STANDARD ..........................................................................................4

     A.     Fed. R. Civ. P. 12(b)(6) ........................................................................4

     B.     Fed. R. Civ. P. 12(b)(1) ........................................................................5

IV.    ARGUMENT .......................................................................................................5

     A.     Plaintiff's *Bivens* Claims Are Precluded Under the PLRA Because
        Plaintiff Failed to Exhaust His Administrative Remedies. ....................5

          1.     Plaintiff Did Not Follow the Proper PLRA Exhaustion Process
             on His *Bivens* Claims. ...............................................................7

     B.     Plaintiff's Eighth Amendment Claims Are Not Cognizable Under
        *Egbert*. ...................................................................................................7

          1.     Plaintiffs' *Bivens* Claims Arise in a "New Context." .....................10

          2.     Special Factors Counsel Against Implying a *Bivens* Remedy..........11

     C.     Plaintiff Failed to Properly Serve Defendant Gomez. ................................13

V.     CONCLUSION....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albino v. Baca,*
   747 F.3d (9th Cir. 2014) ........................................................................6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................................4, 8

*A–Z Int'l v. Phillips,*
   323 F.3d 1141 (9th Cir. 2003) .............................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................................4

*Benny v. Pipes,*
   799 F.2d 489 (9th Cir. 1986) .............................................................14

*Bivens v. Six Unknown Named Agents,*
   403 U.S. 388 (1971) .................................................................1, 2, 3, 7

*Blackwell v. United States, et al.,*
   2019 WL 8953363 (C.D. Cal. Dec. 9, 2019) ....................................11

*Blank v. United States,*
   2017 WL 5591633  (N.D. Tex. Nov. 17, 2017) ................................11

*Booth v. Churner,*
   532 U.S. 731 (2001) ..............................................................................6

*Brockmeyer v. May,*
   383 F.3d 798 (9th Cir. 2004) .............................................................14

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) .................................................................4

*Carlson v. Green,*
   446 U.S. 14 (1980) ................................................................................8

*Correctional Services Corp. v. Malesko*,
   534 U.S. 61 (2001) ................................................................................8, 11

*Crawford-El v. Britton*,
   523 U.S. 574 (1998) ...................................................................................13

*Davis v. Passman*,
   442 U.S. 228 (1979) .....................................................................................8

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
   840 F.2d 685 (9th Cir. 1988) ................................................................13, 14

*Egbert v. Boule*,
   142 S. Ct. 1793 ............................................................................................1

*Gonzalez v. Hasty*,
   269 F. Supp. 3d 45 (E.D.N.Y. Sept. 18, 2017) ...........................................11

*Green v. Carlson*,
   581 F.2d 669 (7th Cir. 1978) ......................................................................10

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ..........................................................................8, 9, 10

*Jackson v. Hayakana*,
   682 F.2d 1344 (9th Cir. 1982) ....................................................................14

*King v. Atiyeh*,
   814 F.2d 565 (9th Cir. 1987) ......................................................................14

*Mason v. Genisco Technology Corp.*,
   960 F.2d 849 (9th Cir. 1992) ......................................................................14

*McKinney v. Carey*,
   311 F.3d 1198 (9th Cir. 2002) ...................................................................5, 6

*Minneci v. Pollard*,
   565 U.S. 118 (2012) .....................................................................................8

*Nat'l Wildlife Fed'n v. Espy*,
   45 F.3d 1337 (9th Cir. 1995) ........................................................................4

*Navarro v. Block*,
 250 F.3d 729 (9th Cir. 2001) .......................................................................4

*Pareto v. FDIC*,
 139 F.3d 696 (9th Cir. 1998)........................................................................5

*Porter v. Nussle*,
 534 U.S. 516 (2002) ......................................................................................6

*Rhodes v. Robinson*,
 621 F.3d 1002 (9th Cir. 2010).......................................................................6

*Roberts v. Corrothers*,
 812 F.2d 1173 (9th Cir. 1987) ......................................................................4

*Ross v. Blake*,
 136 S. Ct. 1850 (2016) ..................................................................................6

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004)......................................................................5

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ......................................................................4

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998)......................................................................5

*Townsel v. Contra Costa County*,
 820 F.2d 319 (9th Cir. 1987)......................................................................14

*United States v. Wilson*,
 503 U.S. 329 (1992) ......................................................................................3

*Vaden v. Summerhill*,
 449 F.3d 1047 (9th Cir. 2006)......................................................................6

*W. Min. Council v. Watt*,
 643 F.2d 618 (9th Cir. 1981)....................................................................4,5

*Woodford v. Ngo*,
 548 U.S. 81 (2006) ........................................................................................6

*Ziglar v. Abbasi,*
  137 S. Ct. 1845 (2017) ..................................................................................8

**Statutes**

42 U.S.C. § 1997e(a) ..................................................................................6, 12

**Regulations**

28 C.F.R. § 542.13 ...........................................................................................3

28 C.F.R. § 542.14 ...........................................................................................3

28 C.F.R. § 542.15 ...........................................................................................3

28 C.F.R. § 542.15(a) .......................................................................................3

28 C.F.R. § 542.18 ........................................................................................3, 4

28 C.F.R. §§ 542.10-542.19 .........................................................................3, 7

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on October 24, 2022 at 10:00 a.m., or as soon thereafter as it may be heard, Defendant Federal Bureau of Prisons, Defendant USP Victorville Medical Department, Defendant USP Medical Nurse Gomez, and USP Victorville Officer Martini, will, and hereby do, move this Court for an order dismissing Plaintiff's Complaint in part for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   This motion will be made before the Honorable Christina A. Snyder, United States District Judge, in Courtroom 8D of the First Street U.S. Courthouse located at 350 W. 1st Street, Los Angeles, CA 90012.  Defendants bring this motion to dismiss on the grounds that (1) Plaintiff failed to exhaust his administrative remedies prior to filing suit, (2) Plaintiff cannot demonstrate a violation of his Eighth Amendment rights under the new standard set by the Supreme Court in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and (3) Plaintiff failed to properly serve Defendant Gomez.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Pablo Prieto, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

Plaintiff is a pro se litigant currently incarcerated at the United States Penitentiary in Beaumont, Texas.  Defendants are therefore exempt from compliance with the meet and confer requirements of Local Rule 7-3.  L.R. 16-12(c)

1

2    Dated: September 23, 2022                Respectfully submitted,

3                                             E. MARTIN ESTRADA
                                              United States Attorney
4                                             DAVID M. HARRIS
                                              Assistant United States Attorney
5                                             Chief, Civil Division
                                              JOANNE S. OSINOFF
6                                             Assistant United States Attorney
                                              Chief, General Civil Section, Civil Division
7
                                             */s/ Rahul R.A. Hari*
8                                             _____
9                                             RAHUL R.A. HARI
                                              Assistant United States Attorney
10
                                             Attorneys for Defendants
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff alleges that while housed at the United States Penitentiary in Victorville, California ("USP Victorville"), Defendant Martini and other unnamed officers threatened physical violence, restrained Plaintiff, and then assailed Plaintiff until he required medical attention.    Plaintiff next alleges that Defendant Gomez woke Plaintiff from unconsciousness by drilling a hole in Plaintiff's leg for "no medical or other reason." Compl. ¶16.    As compensation for these alleged acts Plaintiff seeks $120,000.00 in compensatory damages, $50,000.00 in punitive damages, and an award for the costs of filing suit.

Plaintiff's constitutional claims should be dismissed with prejudice and without leave to amend.    *First*, Plaintiff failed to avail himself of the Bureau of Prisons ("BOP") administrative remedy process before filing suit, despite awareness that remedies existed, and having availed himself of said remedies on other facts.    *Second*, under the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), Plaintiff's Eighth Amendment claim presents a new context not previously authorized by the Supreme Court, and multiple special factors counsel against expansion of the implied damages remedy under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).    *Lastly*, Plaintiff's claims against Defendant Gomez should be dismissed for failure to effectuate service in the more than 13 months that have passed since the filing of Plaintiff's Complaint.

### II.    STATEMENT OF FACTS

Plaintiff Raynard Davis is an inmate at the United States Penitentiary in Beaumont, Texas.    From April 5, 2019 to November 12, 2020, Plaintiff was incarcerated at USP Victorville.    Plaintiff is projected to be released on December 20, 2026, via Good Conduct Time release.

On August 2, 2021, Plaintiff first filed his Complaint in the instant litigation.    After numerous attempts, Plaintiff completed service on Defendant Martini and the United

States Attorney's Office in May 2022. Defendant Gomez, initially identified as "Nurse Gonzalez" in Plaintiff's Complaint, was never properly served.

In his Complaint, Plaintiff alleges that on October 18, 2019, while housed in a Suicide Watch Cell in the Special Housing Unit ("SHU") at USP Victorville, he was threatened with physical violence and then pepper-sprayed by correctional officers, including Defendant Martini. Compl. ¶¶9-10. Plaintiff alleges he was then restrained and escorted to a "blindspot" in the penitentiary's security camera coverage and assailed by Defendant Martini and other officers, causing Plaintiff to suffer from seizures. Compl. ¶¶12-13. He further alleges he awoke in the penitentiary's medical facility to Defendant Gomez "drilling a hole" in his leg for "no medical, or other reason." Compl. ¶¶14-16. Plaintiff asserts the following causes of action:

- Violations of Plaintiff's "5th and 14th Amendments, due process and equal protection" rights when BOP staff allegedly prevented Plaintiff from seeking administrative remedies. Plaintiff alleges the same denial constitutes "cruel and unusual punishment." Compl. at 3-4.

- Violations of Plaintiff's "5th and 14th Amendments, due process and equal protection" rights and "cruel and unusual punishment and medical malpractice" when Defendant Gomez allegedly drilled a hole in Plaintiff's leg "for no reason." Compl. at 4.

- Violations of Plaintiff's "5th and 14th Amendments, due process and equal protection" rights and "cruel and unusual punishment" when Defendant Martini and other officers allegedly "assaulted Plaintiff in the shower" and "slammed his head which lead to Plaintiff's seizure." *Id.*

Plaintiff states that the case "is a *Bivens* Civil Action Claim and this Court has jurisdiction and venue for Federal Prisoners." Compl. at 1. In a section titled "Administrative Remedies," Plaintiff acknowledges that he did not submit his constitutional claims to the appropriate administrative authority, instead stating he was refused "access to remedies and his Due Process." Compl. ¶ 8. Plaintiff states that he did

file a Federal Tort Claim. *Id.*

## A. The PLRA's Four-Step Administrative Process and Plaintiff's Administrative Submissions

Pursuant to 28 C.F.R. §§ 542.10-542.19, the BOP administrative remedy process requires inmates to proceed through the following four steps before they are eligible to file suit in Federal Court:

- **Informal Resolution:** First, the inmate must seek informal resolution of the issue of concern at the institution of confinement. 28 C.F.R. § 542.13.

- **Formal Complaint to Warden:** If the informal resolution is unsuccessful, the inmate must present his complaint to the Warden by submitting a BP-9 form within 20 days of the challenged event. 28 C.F.R. § 542.14.

- **Appeal to Regional Director:** If the inmate is not satisfied with the Warden's response, the inmate must appeal the response by submitting a BP-10 form to the Regional Director within 20 days after the Warden's response. 28 C.F.R. § 542.15.

- **Final Appeal to Central Office:** If the inmate is not satisfied with the Regional Director's response, he must appeal the response by submitting a BP-11 form to the Office of General Counsel ("OGC") in Washington, DC within 30 days after the Regional Director's response. 28 C.F.R. § 542.15.

Prieto Decl. ¶ 10.

An inmate's administrative remedy request or appeal that is accepted for response is considered filed on the date it is logged into the SENTRY administrative remedy index. 28 C.F.R. § 542.18. Prieto Decl. ¶ 12. When a remedy request or appeal is logged into SENTRY, a receipt is generated from the SENTRY program. *Id.* Those receipts are delivered to the inmates by the Associate Warden's Secretary. *Id.*

A final decision from the OGC completes the BOP's administrative remedy process. 28 C.F.R. § 542.15(a); *see United States v. Wilson*, 503 U.S. 329, 335 (1992). Thus, the administrative process is not complete until: (1) the OGC replies, on the merits, to the

inmate's appeal, or (2) the response is not forthcoming from the OGC within the time allotted for reply.  *See* 28 C.F.R. § 542.18.

Since 2010, Plaintiff has submitted a total of 25 administrative remedy requests or appeals while in BOP custody.  Prieto Decl. ¶ 13.  Seven of these submissions post-date the incidents alleged in Plaintiff's Complaint.  Of those, six allege incidents at USP Victorville.  Prieto Decl. ¶ 14.  And of those, none relate to the facts alleged in Plaintiff's Complaint in this case.  *Id.*[1]

## III.  LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted, quoting *Twombly*, 550 U.S. at 555, 557)).  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of

---

[1] Four relate to allegations that USP Victorville staff forced Plaintiff to be on the yard despite threats from the general population.  Prieto Decl. ¶ 14.  The remaining two relate to requests for dental care for a damaged tooth.  *Id.*

law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

### B.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges a court's subject-matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations omitted). Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

## IV.    ARGUMENT

### A.    Plaintiff's *Bivens* Claims Are Precluded Under the PLRA Because Plaintiff Failed to Exhaust His Administrative Remedies.

It is well established that federal inmates must exhaust all available administrative remedies prior to bringing a *Bivens* action. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (*per curiam*). The Prison Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see Booth v. Churner*, 532 U.S. 731, 736 (2001).  This exhaustion requirement is "mandatory" and applies to *Bivens* actions.  *McKinney*, 311 F.3d at 1199 (quoting *Booth*, 532 U.S. at 741); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002).

An action must be dismissed unless the prisoner exhausts his available administrative remedies before he files suit, even if the prisoner fully exhausts while the suit is pending. *McKinney*, 311 F.3d at 1199; *see also Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) ("[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending."); *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before prisoner sends complaint to court, it will be dismissed even if exhaustion is completed by the time complaint is actually filed).

"Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *McKinney*, 311 F.3d at 1200.  The exhaustion requirement provides an incentive for prisoners to use the administrative review process and allows prisons an opportunity to correct errors before a lawsuit is brought.  *See Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).  As the Supreme Court has held, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

A defendant is entitled to resolution on exhaustion grounds when: (1) an administrative remedy was available to the plaintiff, and (2) the plaintiff did not exhaust that available remedy prior to bringing suit.  *Albino v. Baca*, 747 F.3d at 1166, 1172 (9th Cir. 2014).  The Supreme Court has reaffirmed the mandatory requirement of exhaustion and rejected a "freewheeling approach to exhaustion" that allowed prisoners to avoid the requirements of the PLRA.  *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016).

1.    <u>Plaintiff Did Not Follow the Proper PLRA Exhaustion Process on His *Bivens* Claims.</u>

Here, the BOP's four-step administrative remedy process was readily available to Plaintiff.  *See* 28 C.F.R. §§ 542.10–542.19.  Plaintiff received a handbook detailing the process when he arrived at USP Victorville, and Program Statement 1330.18, *Administrative Remedy Program*, was available in the law library.  Prieto Decl ¶ 7.  Indeed, Plaintiff is experienced at navigating the BOP administrative remedy process, having availed himself of the procedures on at least 25 separate occasions during his incarceration.  Prieto Decl ¶ 13.

Plaintiff admits outright that the extent to which he sought administrative relief in this case was the submission of an FTCA claim.  Compl. ¶ 8.  Plaintiff's only justification for failing to submit a PLRA claim is an unspecific allegation that he was "denied all access to Remedies, due to USP Victorville staff refusing to give Plaintiff access to Remedies and his Due Process."  *Id.*  But as outlined above, many of Plaintiff's administrative complaints post-date the incidents alleged in his Complaint and concern USP Victorville staff.  But in none of those submissions does he assert facts related to those he now raises before this Court.

Because Plaintiff failed to exhaust his available remedies, Plaintiff's *Bivens* claims should be dismissed with prejudice and without leave to amend.

**B.    Plaintiff's Eighth Amendment Claims Are Not Cognizable Under *Egbert*.**

Were Plaintiff able to overcome his exhaustion hurdles, his *Bivens* claims still should not survive scrutiny under the Supreme Court's latest jurisprudence.

While the Supreme Court once created a cause of action for damages where federal officials searched and arrested the plaintiff in his home without a warrant under the Fourth Amendment, *Bivens*, 403 U.S. at 389, this appropriation of legislative power is

disfavored.[2]   After *Bivens*, the Supreme Court found an implied cause of action in the
Constitution only twice more: in *Davis v. Passman*, 442 U.S. 228 (1979), for a sex
discrimination claim against a Congressman under the Fifth Amendment, and then again
in *Carlson v. Green*, 446 U.S. 14 (1980), for a claim of inadequate medical care against
federal jailers under the Eighth Amendment.   Since 1980, however, the Supreme Court
has "consistently rebuffed requests to add to the claims allowed under *Bivens*, having
"come 'to appreciate more fully the tension between' judicially created causes of action
and 'the Constitution's separation of legislative and judicial power." *Egbert*, 142 S. Ct. at
1802 (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020)).   Accordingly, the creation
and  expansion  of  this  implied  constitutional  tort  liability,  *i.e.*,  *Bivens*  action,  is  "a
'disfavored' judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1845, 1848 (2017) (quoting
*Iqbal*, 556 U. S. at 675).[3]

Recent Supreme Court jurisprudence has recognized that *Bivens*, *Passman*, and
*Carlson* were the aberrant byproducts of an "*ancient regime*."  *Abbasi*, 137 S. Ct. at 1855.
It has since "gone so far to observe that if the Court's three *Bivens* cases [had] been . . .
decided today, it is doubtful that [it] would have reached the same result."   *Hernandez*,
140 S. Ct. at 735, 742-43 (internal quotation marks omitted, first alteration in original).
Indeed, *Carlson* was on shaky ground when it was decided.  Four justices expressed grave
concerns with extending *Bivens* to the Eighth Amendment.  *Carlson*, 446 U.S. at 25-54
(Powell and Stewart, J.J., concurring in judgment; Burger, C.J., dissenting; Rehnquist, J.,

---

[2] The Supreme Court rejected First and Fourth Amendment claims against a Border
Patrol agent who allegedly assaulted the plaintiff on his property and later retaliated
against him. *Egbert*, 142 S. Ct. at 1806-1809.

[3] *Hernandez*, 140 S. Ct. at 743 ("And for almost 40 years, we have consistently
rebuffed requests to add to the claims allowed under *Bivens*."); *Minneci v. Pollard*, 565
U.S. 118, 124 (2012) ("Since *Carlson*, the Court has had to decide in several different
instances whether to imply a *Bivens* action. And in each instance it has decided against the
existence of such an action."); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68
(2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new
context or new category of defendants."); *Egbert*, 142 S. Ct. at 1799 ("Over the past 42
years . . . we have declined 11 times to imply a similar cause of action for other alleged
constitutional violations.").

dissenting).  Now, any expansion of *Bivens* is deemed "a disfavored judicial activity." *Hernandez*, 140 S. Ct. at 742 (internal quotation marks and citation omitted).  That is because Congress, and not the Judiciary, is tasked with assessing "whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government based on constitutional torts." *Id.*; *Egbert*, 142 S. Ct. at 1800 ("[O]ur cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."  "When asked to imply a *Bivens* action, '[the Court's] watchword is caution.'" *Hernandez*, 140 S. Ct. at 742).

At bottom, a "court faces only one question: whether there is any rational reason **(even one)** to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (emphasis added) (quoting *Abbasi*, 137 S. Ct. at 1858).  Put another way, the question is not "whether a court can determine a damages amount" but "[r]ather, . . . whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy' at all." *Id.* at 1810 (quoting *Abbasi*, 137 S. Ct. at 1858).

Accordingly, the Supreme Court has articulated a two-step inquiry for courts to undertake when evaluating whether to permit a *Bivens* claim.  *Hernandez*, 140 S. Ct. at 743.  *First*, whether the case presents a "new context." *Abbasi*, 137 S. Ct. at 1859.  *Second*, if the case presents a new context, then whether special factors counsel hesitation in recognizing a *Bivens* remedy.  *Id.* at 1857.  Indeed, *Egbert* called into question whether the two-step inquiry should be applied at all because "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.  And Justice Gorsuch answered that question: "if the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Id.* at 1810 (Gorsuch, J., concurring).  To the extent that a two-step inquiry remains relevant, its application to this case demonstrates that Plaintiffs cannot assert a *Bivens* claim under the Eighth Amendment against Individual Defendants.

1.  <u>Plaintiffs' *Bivens* Claims Arise in a "New Context."</u>

The proper test for determining whether a case presents a new *Bivens* context is whether "the case is different in a meaningful way from the three previous *Bivens* cases decided by [the Supreme Court].". *Hernandez*, 140 S. Ct. at 743.  A non-exhaustive list of such differences includes:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.  The Supreme Court has defined "new context" with extreme breadth.  Even where the difference between a claim and the one recognized in *Carlson* is small, "the new-context inquiry is easily satisfied." *Id* at 1865.

Plaintiff's Eighth Amendment *Bivens* claims regarding excessive force and medical care meet the low bar on establishing a new context.  Plaintiff alleges that he was forcibly escorted to a shower "blindspot" and assailed while restrained.  Compl. ¶ 13.  He further alleges that Defendant Gomez drilled a hole in Plaintiff's leg "for no medical, or other reason."  Compl. ¶ 16.  Both sets of alleged circumstances are drastically different from those considered in *Bivens*, *Carlson*, and *Passman*.  Of the three, only *Carlson* considered allegations of misconduct within a federal prison and by Bureau of Prisons employees.  There, the Supreme Court found that a monetary remedy should exist where prison employees denied medical treatment in a way that the appellate court described as "so inappropriate as to evidence intentional maltreatment causing death." *Green v. Carlson*, 581 F.2d 669, 675 (7th Cir. 1978).  The Supreme Court agreed, finding that the medical staff "failed to give [the decedent] competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack

more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time to transfer to an outside hospital," and that "their indifference was in part attributable to racial prejudice." *Carlson*, 446 U.S. at 1470 n.1.

Here, the alleged deprivation is demonstrably different from the facts of *Carlson*. Even accepting Plaintiff's recitation of events, the facts here involve alleged assault, not the withholding of necessary medical treatment. And the claims against Defendant Gomez involve the alleged *administration* of unnecessary medical treatment, not the *denial* of life saving procedures. These differences are fatal to Plaintiff's *Bivens* claims. *See Abassi*, 137 S. Ct. at 1864 ("[E]ven a modest extension [of *Bivens*] is still an extension."); *see also Egbert*, 142 S. Ct. at 1805 ("[A] plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law."). Courts have declined to extend the *Bivens* remedy in an array of Eighth Amendment circumstances,[4] and given the recent *Egbert* decision, the Court should decline to extend the *Bivens* remedy here.

## 2. Special Factors Counsel Against Implying a *Bivens* Remedy.

To be a "special factor counselling hesitation," a factor "must cause a court to hesitate before answering that question in the affirmative." *Abbasi*, 137 S. Ct. at 1858. The special factors analysis focuses on whether Congress or the judiciary is better situated to weigh the competing policy considerations and to determine whether "to create and enforce a cause of action for damages against federal officials in order to remedy a

---

[4] *See Malesko*, 534 U.S. at 64-65, 74 (declining to extend *Bivens* where the plaintiff was not allowed to use the elevator despite a permit to do so based upon his medical condition, and suffered from a heart attack while taking the stairs); *Blackwell v. United States, et al.*, 2019 WL 8953363, at *2, 4-5 (C.D. Cal. Dec. 9, 2019) (no *Bivens* remedy where the plaintiff, who had COPD, was assigned to a cell with inadequate ventilation); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 48, 64-66 (E.D.N.Y. Sept. 18, 2017) (no *Bivens* remedy where the plaintiff was assigned to the SHU); *Blank v. United States*, 2017 WL 5591633, at *1, *4 (N.D. Tex. Nov. 17, 2017) (no *Bivens* remedy where plaintiff, who had a pre-existing compromised immune system, developed a medical condition as a result of prison's failure to address a pigeon infestation).

constitutional violation." *Id*. at 1856. For example, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. at 1858. In general, "if there are sound reasons to think Congress might doubt the efficacy of a damages remedy as part of the system for enforcing the law and correcting a wrong," a court must refrain from extending the *Bivens* remedy. *Id*. In making this assessment, a court should consider "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." *Id*.; *see also id*. at 1856 (noting the "time and administrative costs attendant upon intrusions resulting from the discovery and trial process"). A court should also consider whether Congress "has designed its regulatory authority in a guarded way, making it less likely that Congress would want the judiciary to interfere." *Id*. at 1858.

Numerous special factors counsel against implying a damages remedy for Plaintiff's claims. Chief among them is the availability of an "alternative, existing process for protecting" Plaintiff's interests. *Id*. at 1858. As described, BOP regulations provide a comprehensive four-level administrative remedy process to redress the kind of allegations underlying Plaintiff's claim—including adjudication of the grievance within the prison and appeals to the Regional Director and to the Office of General Counsel. *See* 28 C.F.R. §§ 542.13–542.15. Congress has implicitly approved these remedies under the PLRA by requiring inmates to exhaust them before filing suit. *See* 42 U.S.C. § 1997e(a). This Congressionally approved process is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *See Abbasi*, 137 S. Ct. at 1858.

Even if Plaintiff did not have available to him this alternative process, other factors counsel hesitation in expanding *Bivens* to the context at bar. *First*, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. Congress' repeated action in the field of prison litigation suggests that Congress does not want an implied damages remedy for the type of claim Plaintiff has asserted here. Fifteen years after *Carlson* was decided, Congress passed the PLRA,

which "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.*  Although the PLRA's exhaustion provisions applies to *Bivens* suits, the Supreme Court found notable that it "does not provide for a standalone damages remedy against federal jailers," thereby suggesting that Congress specifically considered how it wanted to address prisoner abuse claims and "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.*

*Second*, the system-wide costs and burdens on administration for defending against these types of claims could be particularly high based on the sheer volume of potential litigation and the resulting disruption to prison operations.  Affirmatively recognizing a federal damages claim in the context Plaintiff proposes could open the floodgates to such litigation and hamper the ability of prison officials to carry out their correctional goals. Indeed, Eighth Amendment claims have a subjective component that can make a case more difficult to administer and that potentially increases the likelihood that non-meritorious claims survive early dispositive motions.  *See Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998) (explaining that "an official's state of mind is easy to allege and hard to disprove" and "therefore implicates obvious concerns with the social costs of subjecting public officials to discovery and trial, as well as liability for damages").  Declining to recognize a *Bivens* remedy does not mean that alleged misconduct would go unchecked. Internal investigations through the BOP's Office of Internal Affairs or DOJ's Office of the Inspector General, as well as the threat of criminal prosecution, serve as both deterrents and remedial measures for staff misconduct.

For these reasons, the Court should not imply a *Bivens* remedy for Plaintiff's Eighth Amendment claims and the claims should be dismissed without leave to amend.

### C.    Plaintiff Failed to Properly Serve Defendant Gomez.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly [with the summons and complaint] under Fed.R.Civ.P. 4.  *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).  Although Rule 4 is a "flexible Rule, ... [w]ithout substantial

13

compliance with Rule 4 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id.* (citing *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), amended by *Benny v. Pipes*, 807 F.2d 1514 (9th Cir. 1987), cert. denied, *Pipes v. Benny*, 484 U.S. 870 (1987).

Notably, when a Rule 12 motion challenges service, it is the plaintiff who bears the burden of establishing the validity of service as governed by Rule 4, not the defendants who bear the burden of showing prejudice from such improper service. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Rule 4(m) of the Federal Rules of Civil Procedure provides that a district court "must dismiss" an action without prejudice if a defendant is not served within 120 days after the complaint is filed, unless the plaintiff "shows good cause for the failure." If the plaintiff shows good cause, "the court must extend the time for service for an appropriate period." However, the good cause exception "applies only in limited circumstances, and inadvertent error or ignorance of governing rules alone will not excuse a litigant's failure to effect timely service." *Townsel v. Contra Costa County*, 820 F.2d 319, 320 (9th Cir. 1987); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigations.").

Further, pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure, service is still ineffective even if the defendants receive actual notice of the action. *See Mason v. Genisco Technology Corp.*, 960 F.2d 849, 852-53 (9th Cir. 1992). There is no requirement within the Federal Rules that defendants with actual notice must show prejudice as a result of plaintiff's improper service. Actual knowledge (*i.e.*, lack of prejudice) of the action does not cure a plaintiff's improper service under Fed.R.Civ.P. 4(c)(2)(C)(ii). *See id.* A motion to dismiss in this action would not constitute a waiver of a party's objections to service. *See* Fed.R.Civ.P. 12(h)(1); *see also Jackson v. Hayakana*, 682 F.2d 1344, 1347 (9th Cir. 1982).

Here, Defendant Gomez has not been properly served by Defendant and the Court should dismiss Defendant Gomez from the action.

14

1    **V.    CONCLUSION**

2        For the foregoing reasons, Defendant respectfully requests that this Court grant its

3    motion.

4

5     Dated: September 23, 2022                    Respectfully submitted,

6                                                  E. MARTIN ESTRADA
                                                   United States Attorney
7                                                  DAVID M. HARRIS
                                                   Assistant United States Attorney
8                                                  Chief, Civil Division
                                                   JOANNE S. OSINOFF
9                                                  Assistant United States Attorney
                                                   Chief, General Civil Section, Civil Division
10
                                                   */s/ Rahul R.A. Hari*
11                                                 _____
12                                                 RAHUL R.A. HARI
                                                   Assistant United States Attorney
13                                                 Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28