# DECLARATION OF JACOB MARTINI

I, Jacob Martini, do hereby declare and state as follows:

1. I am a Senior Officer Specialist Correctional Officer with the Bureau of Prisons ("BOP"). I am currently stationed at United States Penitentiary ("USP") Victorville in Victorville, California.

## I. EDUCATION AND EMPLOYMENT HISTORY

2. I attended the University of Phoenix where I graduated with my MBA in Business Administration in 2022.

3. I began working as a Correctional Officer with BOP in 2016. I have been stationed at USP Victorville my entire career with BOP.

4. In 2021, I was promoted to Correctional Officer, Senior Officer Specialist.

5. As a Correctional Officer, and now as a Senior Officer Specialist, my primary employment goals are the preservation of life and health. My duties include regular rounds, ensuring USP Victorville rules and procedures are followed, ensuring inmates consult with medical personnel and psychology services where appropriate, and the general security of the institution.

6. The primary purpose of my job is inmate and Correctional Officer safety.

7. As a Senior Officer Specialist, I am firearms qualified and eligible to escort inmates off-institution for medical trips when appropriate.

8. In 2019, I was assigned to the Special Housing Unit ("SHU"), among other units.

9. SHU has over 200 inmates at a time and typically consists of inmates who cannot be in general population for various reasons. This can be for the inmate's own safety or for the safety of other inmates. An inmate can self-identify as a good fit for protective custody or have the determination made for them by personnel at the institution.

10. In 2019, I would also be tasked with escorting inmates to the suicide watch cell, when appropriate. Suicide watch was a separate cell in the medical facility of USP

Victorville which allows for closer monitoring of inmates who may be at risk for suicide. While on suicide watch, an inmate has an officer assigned to watch them 24 hours a day.

### III. PLAINTIFF RAYNARD DAVIS

11. I remember Mr. Davis as an inmate at USP Victorville in 2019 and 2020. I do not remember the exact date Mr. Davis came into the institution.

12. I recall that Mr. Davis was housed in SHU protective custody. This meant Mr. Davis either believed his life would have been in danger in the general population or the institution determined that Mr. Davis's life would have been in danger in general population. I do not recall which was the case.

13. Mr. Davis would be placed on suicide watch frequently during the period he was at USP Victorville. I recall there being times Mr. Davis was placed on suicide watch once or twice a week for months in a row.

14. I recall there being instances where Mr. Davis would repeatedly bang his head on the wall or windows to make himself bleed, instigating suicide watch. I do not know why Mr. Davis would bang his head.

15. I do not recall the details of Mr. Davis' medical history regarding seizures.

### IV. PLAINTIFF'S ALLGEGATIONS

16. I recall that on September 27, 2019, Mr. Davis was placed on suicide watch. I do not recall why Mr. Davis was placed on suicide watch on that date.

17. I was one of the Correctional Officers assigned to escort Mr. Davis from SHU to the suicide watch cell. I do not recall which other officers were present on this occasion.

18. Once Mr. Davis was placed in the cell and his restraints were removed, Mr. Davis began repeatedly banging his head against the door, drawing blood.

19. I witnessed officers instructing Mr. Davis multiple times to stop banging his head against the door. When he would not stop, I witnessed officers again instructing Mr. Davis to stop banging his head against the door or correctional staff would have to pepper spray him. The purpose of the pepper spray was to get him to stop injuring himself, for

1 his own safety. In addition, this would allow the officers to safely enter the cell to aid Mr. Davis. However, Mr. Davis did not stop.

20. At that point, an officer sprayed Mr. Davis with pepper spray. I do not recall the name of the officer who discharged his pepper spray. Mr. Davis ceased banging his head on the door, which allowed us to enter the suicide watch cell.

21. After an inmate is pepper sprayed, BOP policy requires that the inmate be immediately escorted to the showers for decontamination. This is to ensure that no pepper spray remains on their face and/or body.

22. In this case, I, along with other officers, immediately escorted Mr. Davis to the SHU showers, the closest showers to where he was housed on suicide watch.

23. While in the shower, Mr. Davis began to have convulsions. We placed Mr. Davis on the floor for his safety. It became clear to me that Mr. Davis was no longer conscious. We announced a Medical Emergency and contacted the medical department.

24. Medical department staff arrived with a gurney, and I assisted in placing Mr. Davis on the gurney and escorted him back to the medical unit for treatment.

25. Once Mr. Davis was under medical staff care, I remained in the medical department. I do not recall specifically what procedures, if any, were performed on Mr. Davis. It is possible Mr. Davis was administered an IV or given intraosseous ("IO") fluids.

26. I have seen paramedics at BOP administer fluids via IO on multiple occasions, both before and after Mr. Davis's emergency.

27. After Mr. Davis regained consciousness, EMTs arrived at USP Victorville and Mr. Davis was taken off-site for additional monitoring and treatment. I did not accompany Mr. Davis off-site.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of August, at Victorville, California.

_____
JACOB MARTINI